———o———

EDWARD F. PERKINS Respondent, vs. WILLIAM QUIGLEY, Appellant.

1. *Sheriff's deed—Recitals— Transcript from justice—Execution and return nulla bona.*—In a sheriff's deed on an execution issued on a transcript from a justice, it is not necessary to recite that an execution was issued by the justice and returned *nulla bona.* (Carpenter vs. King, 42 Mo., 224.)

2. *Officers, public—Clerk of circuit court—Acts, presumption in favor of validity of—Execution issued on transcript.*—The clerk of the circuit court being prohibited from issuing an execution on a transcript from a justice, till an execution has been issued by the justice and returned *nulla bona, semble,* that it will be presumed when the clerk issues an execution, that such prior execution has been issued and returned *nulla bona.*

3. *Homesteads—What constitutes—Contiguity of land—Statute, construction of.* The only restrictions concerning homesteads in the statute (Wagn. Stat., 697, § 1), relate to the quantity and value of the land, and the parcels of land composing it need not be contiguous, provided they are used in connection with each other.

*Appeal from Linn Circuit Court.*

*Brownlee*, for Appellant.

I. The sheriff's deed is void on its face, inasmuch as it does not recite that executions had been issued on the judgments recited in the deed by the justice. and that they had been returned *nulla bona* before the executions were issued by the clerk of the circuit court. (Wagn. Stat., 839, § 14; Id., 612, § 54; Coonce vs. Munday, 3 Mo., 264; Waddell vs. Williams, 50 Mo., 224.) If the execution must contain this recital, then the deed must, or some evidence must be produced to, show that the execution was properly issued. (Carr vs. Youse, 39 Mo., 349, and authorities above cited.)

II. The head of a family can claim. and hold, two small tracts of land which adjoin each other, as his homestead, using and occupying them both as such, they not containing a greater number of acres than one hundred and sixty, nor exceeding in value the sum of fifteen hundred dollars. (Wagn. Stat., 697, § 1.)

*A. W. Mullins*, for Respondent.

I. The sheriff's deed contained all the recitals required by the statute. (Wagn. Stat., 612, § 54.) No further evidence was necessary in order to its admission. (Id., 612, § 57; McCormick vs. Fitzmorris, 39 Mo.. 24; Merchant's Bank vs. Harrison, 39 Mo., 443; Carpenter vs. King, 42 Mo., 219.)

The case of Coonce vs. Munday (3 Mo., 373) has been modified and substantially overruled by subsequent decisions of this court. (Norton vs. Quimby, 45 Mo., 388.)

II. The defendant occupied and claimed another farm as his homestead, and this farm was subject to levy. (Wagn. Stat., 699, § 8.)

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment, and the title of the plaintiff was derived from a sale and execution levied on land claimed to be protected from execution under the homestead law.

The execution was dated April 3, 1873, and was levied on the 4th of April, 1873, and the sale took place in June, 1873. The notes, upon which the judgment was based, were given in September, 1871.

The defendant in the execution bought a tract of sixty acres of one Henderson in February, 1871, and his deed was recorded in April, 1871. The defendant moved on to the place with his family, and in the month of May, 1871, he bought another tract, adjoining the former, of about seventy-nine or eighty acres from one Wells, and in the fall of that year moved over to this last place, called the Wells place, with his family; and his son (who seems to have been a man of family) moved into the house first occupied by the defendant in the spring and summer of this year. The father and son cultivated the two places conjointly. At the date of the levy and sale above stated, the defendant and his wife were living on the Wells place. The value of either tract, or both, is not shown by any evidence in the case, except that the deeds recite the payment of $1,000 for the Henderson place, and $1,500 for the Wells place.

The court gave the instructions asked by the plaintiff, and also the one asked by defendant, and found a verdict (there being no jury) for the plaintiff, and judgment was entered accordingly.

The instruction given for the plaintiff was as follows:

"If the court sitting as a jury believe from the evidence, that the indebtedness from the defendant to the plaintiff, upon which the judgments were obtained, as recited in the sheriff's deed read in evidence by plaintiff, accrued in the month of September, 1871, or about that time, and that afterwards defendant purchased the premises described in the deed read in evidence from E. P. Wells and wife, which deed is dated May 12, 1872, and that defendant moved to said last named premises and was occupying the same with his family as his homestead at the time plaintiff filed the transcript recited in the sheriff's deed in the office of the clerk of this court, and also at the time the premises in ques-

tion were sold by the sheriff, and purchased by plaintiff, then the plaintiff is entitled to recover."

2. "The defendant is not entitled to hold two homesteads, exempt from levy and sale under execution, at the same time; and if the court, sitting as a jury, believe from the evidence, that the defendant moved with his family from the Henderson place, the premises now in controversy, to the Wells place, and was occupying the same as his homestead, and claiming as such at the time the sheriff levied upon and sold the Henderson place, then the finding should be for the plaintiff."

The instruction given for the defendant was as follows:

"If the court believe from the evidence, that the defendant had acquired the tract of land here sued for, and had filed his deed to the same for record, before contracting the debts upon which the judgments were rendered and execution issued recited in the sheriff's deed read in evidence by plaintiff, and had ever since the said purchase used or occupied the same as his homestead, never having intentionally abandoned the same as such, having all that time a family of his own with whom he resided, it is bound to find for defendant, provided it is further found, that said tract of land does not exceed in value, and did not at the time of the sheriff's sale, the sum of $1,500, and does not contain a greater number of acres than one hundred and sixty."

There was a point made on the trial in regard to the admissions of the sheriff's deed offered by the plaintiff, that it did not recite that executions had been issued by the justice of the peace, before whom the judgments were rendered, and returned *nulla bona* before the execution was issued from the clerk's office of the circuit court. This objection was overruled, and, we think, properly.

The statute concerning executions (Wagn. Stat., 612, § 54) provides, that the sheriff's deed shall recite the names of the parties to the execution, the date when issued, the date of the judgment, order or decree, and other particulars as recited in the execution, also a description of the property, the

time, place and manner of sale, which recital shall be received as evidence of the facts therein stated. In the 7th article of the act concerning justices' courts (Wagn. Stat., 839) the 14th section provides, that "No executions shall be sued out of the court where a transcript is filed, if the defendant is a resident of the county, until an execution shall have been issued by the justice, directed to a constable of the township in which the defendant resides, and returned that the defendant had no goods or chattels whereof to levy the same."

In the case of Carpenter vs. King (42 Mo., 224) the sheriff's deed admitted in that case contained no recital of the issue of an execution from the justice's court, or of any return therein, and was held sufficient *prima facie* evidence of the validity of the execution issued from the clerk's office, and the recitals were declared to contain every material fact required by the statute. The court observed, that "the fact that the execution was issued on a transcript cannot distinguish it, in the operation of the rule, from a case where it was issued on a judgment of the court."

It may be observed in addition to what was said in the case of Carpenter vs. King, that the prohibition of the act does not extend to all cases, for if the defendant was a non-resident of the county, the clerk might issue his writ of execution without regard to the issuance of any by the justice. And, moreover, if it is necessary that this fact be recited in the deed, it would seem equally necessary that the execution of the justice should be directed to the township in which the defendant resides.

Upon general principles, it would seem, that, as the clerk had no power to issue an execution, until after one was issued by the justice and returned *nulla bona*, but was expressly prohibited from so doing, the issuance of such execution from the clerk's office raised the presumption, usually indulged in regard to public officers, that he did his duty and obeyed the statute, until the contrary appeared.

The instructions in this case are, in our opinion, based on an erroneous construction of the statute concerning home-

steads.   The statute defines the word homestead as "a dwelling house and appurtenances, and the land used in connection therewith."   In Webster's Dictionary it is defined as "a person's dwelling place, with that part of his landed property which is about and contiguous to it."   But contiguity does not seem to enter into our statutory definition.   A housekeeper or head of a family may, under our law, own 40 acres in one place, and cultivate 40 more in another by himself, his children or servants or tenants.   It frequently happens that a prairie farm is dependent upon a piece of woodland several miles distant, and both may constitute the homestead; or the owner of a piece of ground on a bluff, where there is a convenient spring and timber, may cultivate a farm in the valley totally separated from the place of residence by any conceivable distance, that would not render the one incapable of being used in connection with the other.   The only restrictions named in the act are the quantity of land and its value.   The whole cannot exceed 160 acres and must not be worth more than 1500 dollars.

In the case now under consideration the two tracts of land, called the Henderson place and the Wells place, were contiguous.   There were dwelling houses on each.   The defendant, after purchasing the one, shifted his residence to the other, and subsequently placed his son on the one left, still, however, using both places for the support of his family, of which his son constituted a member.   There is nothing in the act, which prohibits the householder from moving from one part of his farm to another, or from working or using any portion of it by his children or servants or tenants.

The probability is, that here the value of the two tracts exceeded the amount allowed the protection of the statute.   In such case, it was the duty of the sheriff to ascertain by appraisers the value of the whole tract, or the two tracts, and thus ascertain the location and boundaries of the homestead, and then proceed with his levy on the residue subject to execution, and make return on the execution accordingly.

The judgment is reversed and the cause remanded.   The other judges concur, except Judge Vories, absent.