## CULVER *against* PARISH.

Where it appeared on a *scire-facias* in a process of foreign attachment, that the defendant was indebted to *F*, the absconding debtor, by a promissory note, payable to *F*, or order, on demand, with interest, and secured by mortgage; that *F*, while the holder of such note, demanded payment of the maker, several times, which he failed to make, after which this process was commenced; and that subsequently, on the same day, and twenty-one days after the making of the note, *F*, for a full and valuable consideration, indorsed it to *G*, who had notice of the service of process on the defendant; it was held, 1. that the note had become due, and of course, was over-due, when it was indorsed to *G*; 2. that being so over-due, the transfer of it did not vacate the plaintiff's lien; 3. that the circumstance that the note was collaterally secured by mortgage, did not vary the case in favour of the defendant; 4. that though the equities to which a negotiable note, negotiated after due, is subject, are limited to such as attach to the note itself, and not to claims arising out of collateral matters, yet this doctrine is not applicable to the attachment of such note, by process of foreign attachment; the only case excepted from the operation of this process being where the note is negotiated *before* it becomes payable.

THIS was a *scire-facias* in a process of foreign attachment, brought to recover the amount of a judgment obtained against *Isaac G. Ford*.

The cause was tried before the superior court for *New-London* county, at the *March* term, 1851. The court found the following facts, and reserved the case for the advice of this court.

New-London,
July, 1851.

Culver
v.
Parish.

The defendant and his wife, on the 31st day of *March*, 1848, made and delivered to *Ford*, their promissory note, for the sum of one thousand dollars, payable to him, or order, on demand, with interest, and, at the same time, executed and delivered to him a mortgage deed of certain lands, to secure the payment of the note. *Ford*, while the holder of the note, and before the service of the original process, at several times, and particularly, on the 1st and 21st days of *April*, 1848, demanded of the makers payment of the note. The copy was left in service with him, on the 21st day of *April*, 1848; and he afterwards, and on the same day, for a full and valuable consideration, endorsed and transferred the note to *Edwin B. Gardner*, who, at the time, had notice of the attachment made by the plaintiff.

The question was, whether upon these facts, the plaintiff was entitled to recover.

*Foster*, for the plaintiff, contended, 1. That the note in question being made payable on demand, and passed, by the payee, to *Gardner*, twenty-one days after date, was then dishonoured paper. In analogy to the law as to the dishonour of bills and notes payable on time, twenty-one days is quite too long not to effect the dishonour of a note payable on demand. Cases may be found, it is true, where a note has not been considered as dishonoured, though put in circulation a longer time after date; but a more strict rule would be a furtherance of justice. In *Massachusetts*, by statute, in actions by indorsees against the makers of notes payable on demand, any matter is deemed a defence and may be given in evidence, which would be a defence, if the action were brought by the promisee. Here, the note was actually dishonoured, by a refusal to pay, and that after repeated demands of payment; one of those demands having been made twenty days before the note was put in circulation. This is sufficient, whether it was dishonoured, by mere lapse of time, or not.

2. That the note, when passed to *Gardner*, being dishonoured paper, he took it subject to every infirmity, equity and defence, to which it was liable in the hands of *Ford*, the payee. *Robinson* v. *Lyman*, 10 *Conn. R.* 30. *Stedman* v·

*Jillson, Id.* 55.   In the hands of *Ford*, he was clearly liable to the defence of this process of foreign attachment.   *Stat.* 115. 117. § 229. 232.

*Ford* passed this note, and *Gardner* took it, with notice of the service of the process of foreign attachment on the defendant.   It would operate a fraud on the plaintiff, if his lien could thus be defeated.   *Sylvester* v. *Crapo*, 15 *Pick.* 92.

*Gardner* was a creditor of *Ford*, and took this note on account.   He does not stand here as an innocent purchaser for value.   It is a contest between two creditors of *Ford*.   The plaintiff has attached this debt, and done every thing required by law to perfect his lien.   It would be unjust to allow *Gardner*—especially with full knowledge of the facts—now to come in, and defeat or postpone the plaintiff's lien.

*E. Perkins,* for the defendant, contended, 1. That this note of the defendant, being payable to *Ford*, or order, on demand, with interest, and secured by mortgage, carried with it, on the 21st day of *April*, 1848, the legal presumption that it was not then dishonoured, or paid, and that it was not liable, in the hands of any *bona fide* indorsee, for value, to any equities or defence existing between the original parties. *Wethey* v. *Andrews*, 3 *Hill*, 582.   *Ranger* v. *Cary* & al. 1 *Metc.* 369.   *Sylvester* v. *Crapo*, 15 *Pick.* 92.   *Lockwood* v. *Crawford*, 18 *Conn. R.* 361.   *American Bank* v. *Jenness* & al. 2 *Metc.* 288.   *Stedman* v. *Jillson*, 10 *Conn. R.* 55.

2. That the fact that payment had been actually demanded and refused, before the indorsement, will not, as between these parties, under the circumstances of this case, authorize this note to be treated as one negotiated after dishonoured.   Neither *Ford* nor *Parish*, nor any person claiming through them, is now at liberty, as against the indorsee, to claim that it was dishonoured paper.   *Pease* & al. v. *Hirst* & al. 10 *B. & Cres.* 122. (21 *E. C. L.* 38.)   *Sanford* v. *Mickles* & al. 4 *Johns. R.* 224.   *Field* v. *Nickerson*, 13 *Mass. R.* 131.

3. That *Gardner's* knowledge of the fact that a copy of the original writ had been left with the defendant, before the indorsement, makes no difference.   The title is no more affected, by such knowledge, than it would be, if he had purchased from *Ford* household furniture, or any other property

exempt by law from attachment, knowing that it had been previously attached.

*New-London,*
July, 1851.

Culver
*v.*
Parish.

4. That if, however, this note is to be treated as over-due, when negotiated; yet the indorsement defeated the attachment, and the indorsee is entitled to hold the note free from any such incumbrance. The indorsee of an over-due bill or note is liable to such equities only, as existed against or attached to *the bill or note itself,* and not to claims arising out of collateral matters. *Robinson* v. *Lyman,* 10 *Conn. R.* 31. *Burroughs* v. *Moss,* 10 *B. & Cress.* 558. (21 *E. C. L.* 128.) *Robertson* v. *Breedlove,* 7 *Porter,* 541. *Britton* v. *Bishop,* 11 *Verm. R.* 70. *Walbridge* v. *Kibbee,* 20 *Verm. R.* 543. *Odiorne* v. *Howard,* 10 *N. Hamp.* 343. *Hughes* v. *Larges,* 2 *Barr,* 103.

WAITE, J. At the time when the copy was left in service with the defendant, he was indebted to *Ford,* the absconding debtor, by a promissory note, made by the defendant and his wife, in the sum of one thousand dollars, payable to him, or order, on demand, with interest.

While this note remained the property of *Ford,* it was competent for the plaintiff, under the provisions of our statute relating to foreign attachments, to attach the debt thus due from the defendant; and that attachment could only be defeated, by a transfer of the note before it became due. *Enos* v. *Tuttle,* 3 *Conn. R.* 27.

Was the transfer in the present case, so made? If it was, then the effect was to defeat the plaintiff's lien; otherwise, it will remain. Precisely how long the payee of a negotiable promissory note, payable on demand, may retain it, and then indorse it, before it becomes over-due, does not appear to have been determined.

In order to charge an indorser, in such case, payment must be demanded and notice of the dishonour given, within a reasonable time. *Lockwood* v. *Crawford,* 18 *Conn. R.* 362.

In the present case, when the attachment was made, the payee continued the holder of the note. A period of more than twenty days had elapsed after the making of the note; and payment had been several times demanded of the defendant. Under such circumstances, we think, that the transfer which was subsequently made, was not made before

the note became due, and consequently, did not vacate the plaintiff's lien.

The circumstance that a mortgage was given as collateral security, does not, in our opinion, vary the case in favour of the defendant. It would rather seem to indicate an understanding of the parties, that the debt should be suffered to lie, and not that the note, although in form negotiable, should be put in circulation as mercantile paper.

It is however said, that if the note were negotiated after it became due, yet as the indorsement passed the legal title, it is liable, in the hands of the indorsees, only to such equities as attach to the note itself, and not to claims arising out of collateral matters. And this is undoubtedly so. Thus, if a debt be due from the payee to the maker, it cannot be set off against the note in a suit by the indorsees. *Robinson* v. *Lyman,* 10 *Conn. R.* 31. *Stedman* v. *Jillson, Id.* 55. *Burrough* v. *Moss* & al. 10 *B. & C.* 558. (21 *E. C. L.* 128.)

But this rule does not apply to an attachment of a debt under our foreign attachment laws. They provide, that any debt due to the absconding debtor may be attached; and there is no exception in our laws, as there is in those of *Massachusetts,* in favour of debtors upon negotiable securities. *Cushman* v. *Haynes & Truse,* 20 *Pick.* 132.

A debt due upon a negotiable promissory note, is as much liable to attachment as any other debt, with this qualification, that when the note is negotiated before it becomes due, it will defeat the attachment. *Enos* v. *Tuttle,* ubi sup. This qualification is allowed, for the purpose of giving effect to the law making such instruments negotiable, that indorsees may take them, before they become payable, without enquiring whether any liens have been created upon them, while in the possession of previous holders. But where they take them after they become payable, their situation is different; and it is for them to enquire, whether they still remain valid securities. Thus, if a promissory note is paid, and then indorsed before it becomes due, such payment will not avail the maker in a suit in favour of an indorsee without notice. But if the payment was made to a holder, after the note became due, it will bar any suit in favour of any subsequent indorsee.

Our advice therefore is, that the plaintiff is entitled to judgment.

In this opinion the other judges concurred.

Judgment for the plaintiff.

